KENNETH S. INGBER (SBN 174551)
ken@ingberlawyers.com
KAROL H. INGBER (SBN 181165)
karol@ingberlawyers.com
BENSON K. LAU (SBN 287429)
benson@ingberlawyers.com
INGBER & ASSOCIATES
A PROFESSIONAL LAW CORPORATION
30101 Agoura Court, Suite 119
Agoura Hills, California 91301
Telephone:  (818) 707-3811
Facsimile:   (310) 933-0301

Attorneys for Plaintiff GREEN APPLE ENTERTAINMENT, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREEN APPLE ENTERTAINMENT, INC., a Florida corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>JUSTIN CHAMBERS, an individual,<br><br>          Defendant. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>**(1) DECLARATORY JUDGMENT OF NON-INFRINGEMENT; and**<br>**(2) UNFAIR COMPETITION**<br><br>[DEMAND FOR JURY TRIAL] |

Plaintiff GREEN APPLE ENTERTAINMENT, INC. ("Plaintiff") hereby complains and alleges as follows:

## THE PARTIES

1. Plaintiff GREEN APPLE ENTERTAINMENT, INC. is a corporation organized and existing under the laws of the State of Florida, with its principal place of business located in Boca Raton, Florida.

2. Plaintiff is informed and believes, and based thereon alleges that Defendant JUSTIN CHAMBERS ("Defendant" or "CHAMBERS") is an individual residing in the State of California and is the Chief Executive Officer of CREVICE ENTERTAINMENT COMPANY, LLC ("CREVICE"), an Arizona limited liability company, which is an entity through which CHAMBERS conducts business. Plaintiff is informed and believes, and based thereon alleges that Defendant CHAMBERS owns and hold the copyright to the motion picture, *American Bred* (the "Picture"), Registration No. PAu003793942.

## VENUE AND JURISDICTION

3. Jurisdiction is proper in this Court because this dispute arises under Federal law, namely 17 U.S.C. § 101, et seq. The Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (copyright), 28 U.S.C. § 2201 (Declaratory Judgment Act) and 28 U.S.C. §1338 (b) (unfair competition).

4. Personal jurisdiction exists over Defendant as he is conducting business within the State of California and within this judicial district.

5. Venue is proper in this district under 28 U.S.C. §§ 1391 (b) and (c), and/or §1400(a) as the owner and holder of the copyright at issue resides in California.

6. An actual controversy has arisen between Plaintiff and Defendant as Defendant has threatened litigation against Plaintiff, claiming Plaintiff has infringed on his copyright to the motion picture, *American Bred*. As discussed in greater detail below, Defendant has also published accusations of theft against Plaintiff,

attempted to interfere with third party sublicense contracts, and prevented Plaintiff from distributing the Picture on Amazon. The foregoing threatens injury to Plaintiff, who now seeks a Declaratory Judgment and relief from Defendant's unfair competition.

## FACTS COMMON TO ALL CAUSES OF ACTION

7. Plaintiff is a leading global provider of quality, independent film and television content, and manages domestic and international film rights.

8. In or about May, 2016, Plaintiff and non-party DREAMBRIDGE TELEVISION & FILMS ("Dreambridge") entered into a Distribution Agreement as of January 2, 2016 wherein Dreambridge, as Licensor, granted to Plaintiff, as Licensee, the distribution rights to the motion picture, *American Bred*, throughout the "Territory," which is defined as "the entire Universe" (hereinafter referred to as the "Agreement"). Said Rights include all formats of digital/internet delivery, ancillary, home video, pay TV, free TV and theatrical. Pursuant to the Agreement, which term is 10 years, Plaintiff has the express right to sublicense said Rights. A true and correct copy of the Agreement is attached hereto as Exhibit A.

9. Pursuant to the Agreement, Plaintiff has "sole, exclusive, unfettered and complete discretionary control of the exploitation of the rights in the Picture in every form…" (¶4, p. 5.) Plaintiff has the right to "distribute, license, exhibit or otherwise exploit the Picture or refrain from doing so at its absolute and sole discretion." (Id.)

10. To induce Plaintiff to enter into the Agreement, Dreambridge made numerous express representations and warranties, set forth in greater detail at Paragraphs 11(a)-11(l) of the Agreement. For example, Dreambridge expressly represented and warranted that:

   (a) Dreambridge has "the full right, power, legal capacity and authority to enter into and perform this Agreement and to grant to Licensee the

exclusive rights, licenses and privileges herein granted to Licensee." (¶11(a), p. 7.)

(b) "[N]o other person, form or entity's consent or release is necessary hereunder for Licensor to enter into this Agreement." (Id.)

(c) Dreambridge "owns or controls all rights herein granted to Licensee." (¶11(b), p. 7.)

(d) "There is no outstanding contract, understanding, commitment, restriction or arrangement which is or may be in conflict with this Agreement or which may in any way limit, restrict, impair or interfere with Licensee's rights hereunder…." (¶11(c), p. 7.)

(e) "All rights herein granted to Licensee in and to the Picture are and will be free and clear of liens and encumbrances of every kind and character…" (¶11(d), p. 7.)

(f) "<u>Neither the Picture nor any part thereof, nor the exercise of any rights granted hereunder, will at any time violate or infringe upon the trademark, service mark, trade name, copyright, performing, publicity, patent literary, intellectual, artistic or dramatic right, the right of privacy; or any other right or privilege of any person or entity or constitute unfair competition against any person or entity.</u>" [Emphasis added] (¶11(d).)

11. Pursuant to the Agreement, Dreambridge was to deliver the master elements for the Picture to Plaintiff—most of which was received by Plaintiff, including the master.

12. Plaintiff performed all of the conditions which it was required to perform under the Agreement.

13. In furtherance of its rights under the Agreement and reliance on the representations and warranties it was provided, Plaintiff entered into sublicense agreements with several third parties for the distribution of the Picture.

14. Beginning in or about July of 2016, Defendant CHAMBERS, who owns and holds the copyright to the Picture, began communicating directly with Plaintiff (with copies to Dreambridge) regarding the deliverables under the Agreement, including Plaintiff's request for a hard drive on file. Thereafter, on January 14, 2016, Defendant informed Plaintiff, "Good news, we just approved the artwork today and am awaiting the banners…once I receive the finalized artwork and banners I will send those all to you."

15. On or about January 22, 2017, which was several months after Plaintiff had received the master for the Picture, Defendant sent an email to Plaintiff (which was copied to Dreambridge) stating, "We found a glitch in our master we delivered to that post/delivery house you had us drop a drive off to a while back. We now have a new master that fixes this issue, is there any way to remedy this and deliver a new master, sooner than later?" Thereafter, Plaintiff received the "corrected" master from Defendant. Thus, there was no reason for Plaintiff to question Dreambridge's authority to enter into the Agreement or the representations and warranties stated therein, or to suspect that there were limitations on its authority to act with regard to the Picture.

16. Over the next several months, and continuing through most of May, 2017, Defendant communicated directly, in writing, with Plaintiff on numerous occasions regarding the Picture, including (among other things) the release date and the marketing artwork.

17. On or about May 30, 2017, while Plaintiff was in the process of redesigning the artwork at Defendant's request, Dreambridge purported to terminate the Agreement in violation of the express terms thereof, which it copied to Defendant. Accordingly, on or about June 4, 2017, Plaintiff notified Dreambridge and Defendant of the same and rejected the termination.

18. On or about June 5, 2017, Defendant informed Plaintiff that his contract with Dreambridge had "expired", that Dreambridge did not have any rights

to the Picture, and that Plaintiff did not have the right to distribute the film, regardless of the terms of the Agreement.

19. Thereafter, Defendant published false and misleading statements on the internet accusing Plaintiff of being a "thief", of having "stolen" the Picture, and of being "#film pirates"—despite knowing that he had provided the master to Plaintiff. Defendant also filed a claim of rights infringement with Amazon, which resulted in Amazon refusing to allow Plaintiff to continue distributing the Picture on Amazon pursuant to its rights under the Agreement. Additionally, Defendant contacted third parties with whom Plaintiff had entered into sublicense agreements and attempted to interfere with their contractual relationships with Plaintiff as well. Plaintiff is informed and believes, and based thereon alleges that Defendant has engaged in this wrongful conduct in order to unfairly compete and prevent Plaintiff from exploiting its rights in the Picture so that Defendant can do so himself.

20. Plaintiff has initiated an arbitration against Dreambridge pursuant to the terms of the Agreement. However, Defendant is not a party thereto.

21. Defendant is now threatening to sue Plaintiff for copyright infringement. As such, Plaintiff seeks a declaratory judgment that it is not infringing Defendant's copyright, and seeks injunctive relief as to Defendant's on-going unfair competition, which will continue unless and until enjoined.

## CLAIM ONE

### (Declaratory Judgment of Non-Infringement)

22. Plaintiff repeats and realleges, and by this reference incorporates, each and every allegation set forth in paragraphs 1 through 21, inclusive, as though fully set forth herein.

23. Plaintiff acquired the rights to exploit the Picture as described above and set forth in the accompanying Agreement. However, Defendant now contends that Plaintiff's conduct infringes on his copyright and he has threatened to bring a lawsuit against Plaintiff on that basis. In the interim, and despite having provided

Plaintiff with the master elements for the Picture, including the master and a corrected master, Defendant has published false statements asserting that Plaintiff has stolen the film and is a "thief", he has prevented Plaintiff from continuing to distribute the Picture on Amazon, and he has attempted to interfere with Plaintiff's sublicense agreements with third-parties—all of which threatens injury to Plaintiff.

24. An actual, present and justiciable controversy has arisen and now exists between Plaintiff and Defendant concerning Plaintiff's right to exploit the property covered by Defendant's copyright, i.e., the Picture.

25. Plaintiff seeks declaratory judgment from this Court that Plaintiff is not infringing Defendant's copyright.

## CLAIM TWO
### (Unfair Competition)

26. Plaintiff repeats and realleges, and by this reference incorporates, each and every allegation set forth in paragraphs 1-21, inclusive, as though fully set forth herein.

27. As set forth above, Plaintiff acquired the rights to exploit the Picture as described in the Agreement attached as Exhibit A as of January 2, 2016.

28. Pursuant to the Agreement, Dreambridge was to deliver the master elements for the Picture to Plaintiff—most of which was received by Plaintiff, including the master.

29. Plaintiff performed all of the conditions which it was required to perform under the Agreement.

30. In furtherance of its rights under the Agreement and reliance on the representations and warranties it was provided, Plaintiff entered into sublicense agreements with several third parties for the distribution of the Picture.

31. Beginning in or about July of 2016, Defendant CHAMBERS, who owns and holds the copyright to the Picture, began communicating directly with Plaintiff (with copies to Dreambridge) regarding the deliverables under the

Agreement, including Plaintiff's request for a hard drive on file. Thereafter, on January 14, 2016, Defendant informed Plaintiff, "Good news, we just approved the artwork today and am awaiting the banners…once I receive the finalized artwork and banners I will send those all to you."

32.  On or about January 22, 2017, which was several months after Plaintiff had received the master for the Picture, Defendant sent an email to Plaintiff (which was copied to Dreambridge) stating, "We found a glitch in our master we delivered to that post/delivery house you had us drop a drive off to a while back. We now have a new master that fixes this issue, is there any way to remedy this and deliver a new master, sooner than later?" Thereafter, Plaintiff received the "corrected" master from Defendant. Thus, there was no reason for Plaintiff to question Dreambridge's authority to enter into the Agreement or the representations and warranties stated therein, or to suspect that there were limitations on its authority to act with regard to the Picture.

33.  Over the next several months, and continuing through most of May, 2017, Defendant communicated directly, in writing, with Plaintiff on numerous occasions regarding the Picture, including (among other things) the release date and the marketing artwork.

34.  On or about May 30, 2017, while Plaintiff was in the process of redesigning the artwork at Defendant's request, Dreambridge purported to terminate the Agreement in violation of the express terms thereof, which it copied to Defendant. Accordingly, on or about June 4, 2017, Plaintiff notified Dreambridge and Defendant of the same and rejected the termination.

35.  On or about June 5, 2017, Defendant informed Plaintiff that his contract with Dreambridge had "expired", that Dreambridge did not have any rights to the Picture, and that Plaintiff did not have the right to distribute the film, regardless of the terms of the Agreement.

36. Thereafter, Defendant published false and misleading statements on the internet accusing Plaintiff of being a "thief", of having "stolen" the Picture, and of being "#film pirates"—despite knowing that he had provided the master to Plaintiff. Defendant also filed a claim of rights infringement with Amazon, which resulted in Amazon refusing to allow Plaintiff to continue distributing the Picture on Amazon pursuant to its rights under the Agreement. Additionally, Defendant contacted third parties with whom Plaintiff had entered into sublicense agreements and attempted to interfere with their contractual relationships with Plaintiff as well.

37. Plaintiff is informed and believes, and based thereon alleges that Defendant has engaged in this wrongful conduct in order to unfairly compete and prevent Plaintiff from exploiting its rights in the Picture so that Defendant can do so himself.

38. Plaintiff has no adequate or speedy remedy at law, and believes that Defendant will continue to engage in unfair business practices unless and until enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. For a declaratory judgment that Plaintiff is not infringing Defendant's copyright;

2. For injunctive relief to enjoin Defendant from engaging in unfair competition;

3. For costs of suit herein; and

4. For such other and further relief as the Court may deem just and proper.

///

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and Local Rule 38-1 of the United States District Court for the Central District of California, Plaintiff hereby demands a jury trial on all issues so triable.

Dated: March 26, 2018

INGBER & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

By: _____
Kenneth S. Ingber, Esq.
Karol H. Ingber, Esq.
Benson K. Lau, Esq.
Attorneys for Plaintiff GREEN APPLE ENTERTAINMENT, INC.